IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Steven R. Davis,<br><br>    Plaintiff,<br><br>v.<br><br>Telecom Management Group, Inc.<br>d/b/a Unitel, Uni-Tel, and UniTel,<br>and Somos, Inc.,<br><br>    Defendants. | Case No. 21 C 1503<br><br>Hon. LaShonda A. Hunt |

## MEMORANDUM OPINION AND ORDER

In this action, self-represented Plaintiff Steven R. Davis asserts claims against Defendants Telecom Management Group, Inc. (doing business as Unitel, Uni-Tel, and UniTel) ("Unitel") and Somos, Inc. ("Somos") for violation of the Communications Act of 1934, 47 U.S.C. §§ 201 & 222, Illinois common law conversion, and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1-12. Currently before the Court is Unitel's motion to dismiss Mr. Davis' Second Amended Complaint.[1] (Mot., Dkt. 139). For the reasons discussed below, Unitel's motion is granted in part and denied in part.

## BACKGROUND

Unless otherwise noted, this section sets forth the non-conclusory factual allegations of the Second Amended Complaint ("SAC"), (SAC, Dkt. 134), which must be taken as true for purposes of analyzing Unitel's motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[1] Although the filing is entitled the "Amended Complaint," the Court will refer to it as the Second Amended Complaint because Mr. Davis previously filed an original complaint on April 23, 2018, (Compl., Dkt. 4), and a first amended complaint on August 21, 2018, (Am. Compl., Dkt. 24).

1

Mr. Davis is an individual who resides in Las Vegas, Nevada. (SAC ¶ 1). Unitel is a corporation with a principal place of business in Naperville, Illinois, that operates as a "Responsible Organization" or a "RespOrg," which is an entity that toll-free number subscribers choose to manage and administer their records in the national toll-free number system database. (SAC ¶¶ 2, 17); *see also* 47 C.F.R. § 52.101(b) & (d). Somos is a corporation with a principal place of business in East Brunswick, New Jersey, that has been appointed by the Federal Communications Commission ("FCC") to administer the national administrative database system for toll free numbers. (*Id.* ¶¶ 3, 16); *see also* 47 C.F.R. § 52.101(a).

In 2013, Mr. Davis decided to venture into the telecommunications industry, with a plan to use an algorithm to identify vanity toll-free phone numbers (e.g., 1-844-FIREARM, 1-800-TAX-BROS, and 1-844-24/7-GOLD) and create and sell advertising campaigns for them. (*Id.* ¶¶ 13, 18-19). To that end, Mr. Davis formed a now-defunct company called "1-844-WHO-IS-IT.COM" and began reserving numbers with a RespOrg called Freedom Voice. (*Id.* ¶ 20). Mr. Davis then began interacting with Unitel through an employee named Bob Blumberg and to a lesser extent through the company's president and CEO, Douglas McCabe. (*Id.* ¶¶ 20, 31). According to Mr. Davis, Blumberg gave the impression that they were partners in an advertising venture and persuaded Mr. Davis to transfer his numbers from Freedom Voice to Unitel in early 2014. (*Id.* ¶¶ 21-22). From 2014 to mid-2016, Mr. Davis paid Unitel approximately $100,000 in fees to reserve approximately 40,000-48,000 thousand toll-free vanity numbers. (*Id.* ¶¶ 23-25, 32). At the time, Mr. Davis believed that part of the fees paid to Unitel went towards a charge of $2.00 per number registered with Somos, but Mr. Davis later learned that no such fee was charged by Somos. (*Id.* ¶¶ 25, 28, 36, 51-52).

When Mr. Davis sought to memorialize their dealings, Unitel ignored or stonewalled him for months, eventually offered an "Independent Agent Agreement", and demanded additional payments. (*Id.* ¶¶ 23-25). Mr. Davis did not pay the amounts demanded by mid-April 2016, so Unitel released his numbers to the "spare pool" instead of holding or suspending the numbers while the parties tried to resolve the dispute, as Mr. Davis believes should have happened. (*Id.* ¶¶ 24-25); *see* 47 C.F.R. §§ 52.103(a)(6), (d). Mr. Davis suspects that Unitel advised other companies that the numbers would be released so that those companies could then acquire the numbers and reverse engineer Mr. Davis' algorithms for their own benefit. (*Id.* ¶¶ 26-27, 39-43). Upset and distraught by the unraveling of his venture, Mr. Davis sent Unitel communications containing threats of self-harm,[2] which prompted Blumberg and McCabe to seek and obtain an order of protection. (*Id.* ¶¶ 29-31). In August 2016, an attorney for Mr. Davis' company sent a letter to Somos, demanding that the numbers be placed in suspended or unavailable status pending resolution of the dispute with Unitel. (*Id.* ¶¶ 33-34 & Ex. 12 (Letter), Dkt. 134-12).

On April 13, 2018, Mr. Davis commenced this action by filing a complaint in the United States District Court for the District of Nevada against Unitel, Somos, and L3 Communications, LLC ("L3"), a company he claimed to have unlawfully acquired his numbers after they were released. (Compl., Dkt. 4). On August 21, 2018, Mr. Davis filed an amended complaint removing L3 and adding CenturyLink., Inc., a company that had allegedly merged with L3. (Am. Compl., Dkt. 24). The Nevada District Court dismissed the claims against CenturyLink as untimely, found that it lacked personal jurisdiction over Unitel and Somos, and therefore transferred the action to the United States District Court for the District of New Jersey. (Orders, Dkt. 74 & 94). The New Jersey District Court initially dismissed the claims against Somos with prejudice for failure to state

---

[2] (*See* Emails dated Apr. 6, 2018 & Apr. 8, 2018, Dkt. 26-3).

3

a claim and stayed the remainder of the matter pending resolution of an appeal of the Nevada District Court's transfer order. (Opinion, Dkt. 107) (citing *Davis v. Unitel Voice, LLC*, Case No. 20-15545 (9th Cir.)).[3] Subsequently, the New Jersey District Court denied Mr. Davis' motion to reconsider its dismissal of Somos with prejudice and granted his request to transfer the surviving case against Unitel to the United States District Court for the Northern District of Illinois. (Opinion, Dkt. 119).

After the case was transferred to this district, Mr. Davis sought permission to file an 87-page amended complaint containing 398 allegations and seeking 32 forms of relief. (Mot., Dkt. 124). The District Judge previously assigned to this case[4] dismissed the proposed pleading, finding that it did not comply with Federal Rule of Civil Procedure 8(a)'s "short and plain statement" requirement, but allowed Mr. Davis to file an amended complaint consistent with Rule 8 and prior orders. (Order, Dkt. 133).

On April 21, 2023, Mr. Davis filed a Second Amended Complaint, consisting of 29 pages (excluding exhibits), 53 paragraphs, and seeking 6 forms of relief. (SAC, Dkt. 134). Although Mr. Davis also attached an affidavit containing additional allegations that effectively lengthened the SAC by 10 pages and 31 paragraphs, (Davis Aff., Dkt. 134-1), the pleading still reflects a commendable effort to comply with Rule 8 and the Court's instructions. The SAC asserts claims against Unitel under the Communications Act and Consumer Fraud Act and for conversion based on the $2.00 fee charged to reserve numbers, disclosure of Mr. Davis' information, and failure to hold or suspend the numbers during the parties' dispute (Counts I-II & IV-V). (SAC ¶¶ 36-43 &

---

[3] The appeal was ultimately dismissed for lack of jurisdiction over an interlocutory order. *Davis v. Unitel Voice, LLC*, Case No. 20-15545, Dkt. 11 (9th Cir. Mar. 11, 2021).

[4] This case was reassigned from Judge Kness to Judge Hunt on June 2, 2023. (Reassignment Order, Dkt. 135).

48-52). In addition, the SAC contains a claim against Somos under the Communications Act based on failure to hold or suspend the numbers (Count III). (*Id.* ¶¶ 44-47). In connection with these claims, Mr. Davis seeks $10 million dollars in compensatory damages, punitive damages, return of the phone numbers, fees and costs, and any other relief the Court deems proper. (*Id.* ¶ 53). Unitel moved to dismiss the SAC (Mot. Dkt. 139); the motion is fully briefed and ready for ruling.

## LEGAL STANDARD

Rule 12(b)(6) permits a party to move for dismissal based on a pleading's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In determining whether a complaint states a claim under Rule 12(b)(6), courts must accept all non-conclusory factual allegations as true. *Iqbal*, 556 U.S. at 678. However, legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In addition, the Court must construe the complaint in the light most favorable to the plaintiff and draw all reasonable inferences in the plaintiff's favor. *Levy v. W. Coast Life Ins. Co.*, 44 F.4th 621, 626 (7th Cir. 2022). Complaints drafted by self-represented litigants are construed liberally and held to less stringent standards than pleadings drafted by lawyers. *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017). Applying these principals, a complaint will survive a motion to dismiss if it "states a plausible claim for relief." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). To state a plausible claim for relief, a complaint must "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679. The movant has the ultimate burden to show that dismissal is warranted. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021).

**DISCUSSION**

Unitel's primary argument for dismissal is that Mr. Davis's claims fail because they are based on a misinterpretation of the Communications Act and related regulations. Specifically, Unitel argues that the numbers reserved by Mr. Davis were never in "working status" and therefore termination of the reservations did not constitute a "disconnect" that would trigger "suspend" status. In addition, Unitel contends that Mr. Davis' conversion and Consumer Fraud Act claims fail because he cannot allege facts to support the requisite elements. The Court will discuss each claim in turn.

I.  **Communications Act Claims**

In Counts I-III, Mr. Davis asserts claims under the Communications Act based on the $2.00 fee charged by Unitel to reserve numbers with Somos, Unitel's disclosure of Mr. Davis' algorithm-derived numbers to third parties, and failure to hold or suspend the numbers pending resolution of the dispute between Mr. Davis and Unitel.

Section 201(b) of the Communications Act provides that "[a]ll charges, practices, classifications, and regulations for and in connection with [interstate or foreign communication by wire or radio], shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful[.]" 47 U.S.C. § 201. In addition, the Communications Act imposes a duty on telecommunications carriers "to protect the confidentiality of proprietary information of, and relating to, other telecommunication carriers, equipment manufacturers, and customers[.]" 47 U.S.C. § 222. Any person injured by the conduct of a common carrier that is prohibited or declared to be unlawful by the Communications Act may bring a private cause of action for damages. 47 U.S.C. § 206.

Procedures concerning toll-free numbers are set forth in regulations promulgated by the FCC under the Communications Act. *See* 47 U.S.C. §§ 151-332; *see also* 47 C.F.R. §§ 52.101-52.111. Relevant here, the lag-time regulations in place during the relevant time period (2014-2016) provide that a toll-free number may be: *reserved* by a RespOrg for a subscriber for a maximum of 45 days, 47 C.F.R. §§ 52.103(a)(4), (b); *assigned* to a subscriber until changed to working status or for a maximum of 6 months, whichever occurs first, 47 C.F.R. §§ 52.103(a)(1), (c); *disconnected* for at most 4 months after being discontinued and before being placed into spare status as available for assignment, 47 C.F.R. § 52.103(a)(2), (a)(6), (d); *suspended* during a billing dispute until changed to working status or for a maximum of 8 months, whichever occurs first, 47 C.F.R. §§ 52.103(a)(7), (e); and *unavailable* under certain circumstances upon request, 47 C.F.R. §§ 52.103(a)(8), (f).[5]

### A. Communications Act Claims Against Unitel (Counts I-II)

In Count I, Mr. Davis claims that Unitel violated the Communications Act, 47 U.S.C. § 201(b), and related regulations because the $2.00 fee Unitel charged for reserving numbers with Somos was unjust or unreasonable, Unitel failed to place the numbers in unavailable or suspend status pending resolution of their billing dispute, and Unitel unlawfully sold Mr. Davis' numbers to other entities. Count II is based on Unitel's disclosure of Mr. Davis' algorithm-derived numbers to other entities.

Mr. Davis claims that Unitel told him the $2.00 fee was used to pay Somos to register numbers but he later learned there was no such fee charged by Somos and Unitel was essentially imposing it as a "false surcharge" that was "slowed grift[ed]" from him. Considering that Mr. Davis claims to have reserved 40,000-48,000 numbers through Unitel, that $2.00 fee per number

---

[5] These citations are to the version of the regulation effective before November 23, 2018.

7

appears to make up the bulk of the approximately $100,000 that he claims to have paid Unitel. Besides generally confirming that Mr. Davis paid Unitel fees to reserve numbers, Unitel's briefs do not address the allegations concerning the $2.00 fee. Taking the allegations as true and construing them liberally, Mr. Davis has stated a plausible claim based on the theory that it was an unjust or unreasonable charge or practice under 47 U.S.C. § 201 for Unitel did indeed misrepresent the nature or necessity of that fee.

In connection with an earlier motion to dismiss filed by Somos, the New Jersey District Court dismissed Mr. Davis' claims against Somos based on failure to disconnect because the "FCC regulations at the relevant time in 2016 imposed a maximum four-month time that a toll-free number can be in Disconnect Status, but not a minimum." (Opinion at 4, Dkt. 107). The Court finds this reasoning equally applicable to Mr. Davis' claim against Unitel based on failure to place the numbers in unavailable or suspend status. The regulations applicable at the time included maximum (not minimum) time periods that a number could be placed in a particular status. Thus, the regulations invoked by Mr. Davis imposed no duty to place the numbers in unavailable or suspend status while he attempted to resolve his dispute with Unitel.[6]

With respect to the sale of Mr. Davis' numbers and disclosure of his propriety information (in the form of his algorithm-derived number lists), Unitel essentially argues that "there was no contractual or other basis for Davis to allege any duty of confidentiality on the part of [Unitel] as to the approximate 40,000-48,000 toll-free numbers." (Mot. at 3, Dkt. 139). Not only is this argument completely undeveloped and without citation to any authority, but it also ignores the

---

[6] The Court declines to address Unitel's argument that Mr. Davis' numbers were never in "working status" and therefore not entitled to any protection under the lag-time regulations, although it appears that an issue of fact concerning the status of the numbers would likely preclude such a finding at the dismissal stage. (*See* Resp. at 4, Dkt. 142) (asserting that "the facts show that Defendants did place Plaintiffs' valuable vanity numbers into 'working status'").

8

language of 47 U.S.C. § 222, which imposes a duty on telecommunications carriers "to protect the confidentiality of proprietary information of, and relating to, other telecommunication carriers, equipment manufacturers, and customers[.]" Mr. Davis has alleged that his numbers were identified using a proprietary algorithm and that Unitel was well-aware of his plan to use these numbers in advertising campaigns. Taking the allegations as true and construing them liberally, Mr. Davis has plausibly alleged that Unitel breached the duty not to disclose telecommunications customers proprietary information by selling and/or disclosing his numbers lists to other entities.

In sum, Count I may proceed to the extent that it is based on the allegations concerning the $2.00 fee and sale of Mr. Davis' number lists to other entities, but it is dismissed with respect to the allegations concerning failure to place the numbers on unavailable or suspend status. Count II with respect to the unlawful disclosure of Mr. Davis' proprietary information may also proceed.

      **B.**      **Communications Act Claims Against Somos (Count III)**

In Count III of the SAC, Mr. Davis asserts a claim against Somos for violation of the Communications Act, 47 U.S.C. § 201, based on the allegation that Somos failed to suspend his phone numbers, despite receiving notice regarding his dispute with Unitel, thereby allowing L3 to reserve the numbers. As noted above, the New Jersey District Court previously dismissed Mr. Davis' claims against Somos *with prejudice* and then denied a motion to reconsider the dismissal order. (Orders, Dkts. 107 & 119). In those orders, the New Jersey District Court rejected Mr. Davis' claims against Somos under 47 U.S.C. §§ 201 & 206 and related regulations and for common law negligence for failure to state a claim against upon which relief can be granted. This Court agrees with that assessment. More importantly, the Court declines to revisit an issue that has already been considered twice in this proceeding. Accordingly, Mr. Davis' claim against Somos for violation of the Communications Act, 47 U.S.C. § 201, is again dismissed *with prejudice*.

**II.     State Law Claims**

    **A.     Conversion Claim Against Unitel (Count IV)**

In Count IV, Mr. Davis claims that Unitel is liable for conversion based on having made his numbers irretrievable to him. The elements of a conversion claim under Illinois law are that: "(1) [the plaintiff] has a right to the property at issue; (2) [the plaintiff] has an absolute and unconditional right to the immediate possession of the property; (3) [the plaintiff] made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Stevens v. Interactive Fin. Advisors, Inc.*, 830 F.3d 735, 738 (7th Cir. 2016) (citing *In re Karavidas*, 2013 IL 115767, ¶ 61). As discussed above, the applicable regulations did not impose on Unitel any obligation to retain the numbers for any minimum period of time during the purported billing dispute, nor do the regulations appear to have provided Mr. Davis with an absolute and unconditional right to immediate possession or control of the numbers subject to the purposed billing dispute. Accordingly, Mr. Davis cannot state a claim for conversion under Illinois law and Count IV is dismissed with prejudice.

    **B.     Consumer Fraud Act Claim Against Unitel (Count V)**

In Count V, Mr. Davis claims that Unitel violated the Illinois Consumer Fraud Act based on the allegations concerning the $2.00 fee paid to reserve numbers with Somos. The Consumer Fraud Act "is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010) (quoting *Robinson v. Toyota Motor Credit Corp.,* 201 Ill. 2d 403, 416-17 (2002)). To state a claim under the Consumer Fraud Act, a plaintiff must allege: "(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or

10

deceptive practice occurred during a course of conduct involving trade or commerce." *Siegel*, 612 F.3d at 934. Depending on whether a plaintiff is alleging a claim based on either deceptive or unfair conduct, the pleading standards are different. *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019). For deceptive conduct, a plaintiff must meet Rule 9(b)'s heightened standard for allegations of fraud, *id.*, and also allege that the conduct was likely to deceive reasonable consumers, *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 474 (7th Cir. 2020). Unfair practice claims are not subject to Rule 9(b), but "even under Rule 8, [the plaintiff] must 'describe how the [unfair practice] is oppressive or violates public policy. Without such a description, the complaint fails to state a cause of action.'" *Boone v. MB Fin. Bank, N.A.*, 375 F. Supp. 3d 987, 996 (N.D. Ill. 2019) (quoting *O'Brien v. Landers*, No. 10 C 2765, 2011 WL 221865, at *5 (N.D. Ill. Jan. 24, 2011)).

Mr. Davis claims that Unitel told him that there was a $2.00 fee to register a number with Somos, that he paid the fee for 40,000-48,000 numbers, and that he later learned that there was no such fee charged by Somos. Thus, he is alleging a claim based on deceitful conduct, and Rule 9(b) applies. Although Mr. Davis' Consumer Fraud Act claim is straightforward, the allegations are lacking in detail sufficient to meet Rule 9(b)'s heightened pleading standard. Under Rule 9(b), a plaintiff must allege the "who, what, when, where, and how" of the deceptive conduct. *See Vanzant*, 934 F.3d 730, 738 (7th Cir. 2019).
 Despite attaching voluminous emails to the pleading, Mr. Davis fails to specifically allege sufficient details about Unitel's purported statement that the $2.00 fee was essentially a pass-through charge from Somos. Without details such as when, how, or what exactly was communicated regarding the fee, the claim cannot go forward. Even if Mr. Davis were asserting an unfair practice claim under the Consumer Fraud Act, Count V would still fail because he has

11

not sufficiently described how Unitel's alleged conduct was oppressive or violated public policy. Accordingly, Count V against Unitel for violation of the Consumer Fraud Act is dismissed.

## CONCLUSION

For all the foregoing reasons, Defendant Unitel's motion to dismiss [139] is granted in part and denied in part. Count IV is dismissed with prejudice and Count V is dismissed. Counts I and II may proceed, except to the extent that they are based on allegations relating to any failure to place Mr. Davis' numbers in unavailable or suspend status. Finally, Count III against Defendant Somos, Inc. is dismissed with prejudice.

**DATED**: October 23, 2024                          **ENTERED**:

_LaShonda A. Hunt_
LASHONDA A. HUNT
United States District Judge